Francis J. "Casey" Flynn, Jr., #304712
**LAW OFFICE OF FRANCIS J. FLYNN, JR.**
5067 Metropolitan Plz
Los Angeles, CA 90036
Tele: 314-662-2836
Email: casey@lawofficeflynn.com

**ATTORNEYS FOR PLAINTIFFS**

*[Additional Counsel Listed Below]*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON JONES, derivatively on behalf of COMPASS DIVERSIFIED HOLDINGS, COMPASS GROUP DIVERSIFIED HOLDINGS LLC, and COMPASS GROUP MANAGEMENT LLC,<br><br>         Plaintiffs,<br><br>  v.<br><br>ELIAS J. SABO, LARRY L. ENTERLINE, ALEXANDER S. BHATHAL, JAMES J. BOTTIGLIERI, GORDON M. BURNS, HAROLD S. EDWARDS, HEIDI LOCKE SIMON, NANCY B. MAHON, TERI R. SHAFFER, RYAN J. FAULKINGHAM, and STEPHEN KELLER,<br><br>         Defendants,<br><br>  -and-<br><br>COMPASS DIVERSIFIED HOLDINGS, a publicly traded Delaware statutory trust, COMPASS GROUP DIVERSIFIED HOLDINGS LLC, a Delaware limited liability holding company, and COMPASS GROUP MANAGEMENT LLC, a Delaware limited liability company, | Case No. 2:25-cv-5098<br><br>**JURY TRIAL DEMANDED**<br><br>**PLAINTIFF'S DERIVATIVE COMPLAINT FOR DAMAGES:**<br><br>**(1) Breach of Fiduciary Duty (Derivatively Against the Director Defendants)**<br>**(2) Breach of Fiduciary Duty (Derivatively Against the Officer Defendants)**<br>**(3) Violation of Section 14(a) of the Exchange Act (Against the Director Defendants)** |

PLAINTIFF'S CLASS ACTION COMPLAINT

113936v1

| | |
|---|---|
| Nominal Defendants. | |

Plaintiff Aaron Jones ("Plaintiff"), derivatively on behalf of Compass Diversified Holdings, Compass Group Diversified Holdings LLC, and Compass Group Management LLC (collectively "Compass" or the "Company"), brings the following complaint against the Company's board of directors (the "Board") and executive officers for breaches of fiduciary duties and violation of Section 14(a) of the Securities Exchange Act of 1934. Except for allegations specifically pertaining to Plaintiff and Plaintiff's own acts, the allegations in the Complaint are based upon information and belief, which include but are not limited to: (i) the Company's public filings with the United States Securities and Exchange Commission (the "SEC"); (ii) pleadings filed in *Augenbaum v. Compass Diversified Holdings* (C.D. Ca. 8:25-cv-01003) (the "Securities Action"); (iii) corporate governance documents available on the Company's website; and (iv) other publicly available information.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a)(1), and Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9.

2.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

3.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

4.      Venue is proper in this court under 28 U.S.C. § 1391, because a

significant amount of the conduct at issue took place and had an effect in this District.

## NATURE OF THE ACTION

5.     This is a stockholder derivative action brought by Plaintiff, a stockholder of Compass, on behalf of the Company against the Defendants.  This action alleges breaches of fiduciary duty by the Board and senior executive officers occurring from at least May 1, 2024, to May 7, 2025 (the "Relevant Period"). During that time the Defendants (as defined herein) caused or allowed Compass to issue or make materially false and misleading statements concerning the Company's financial condition and business operations.

6.     Compass is a holding company and trust created for the purpose of acquiring and managing a group of small and middle-market businesses headquartered in North America. The Company takes controlling interests in and actively manages businesses that defendants claim: (i) operate in industries with long-term macroeconomic growth opportunities; (ii) have positive and stable cash flows; (iii) face minimal threats of technological or competitive obsolescence; and (iv) have strong management teams largely in place. Defendants represent that Compass offers investors a unique opportunity to own a diverse group of leading middle-market businesses in the branded-consumer, industrial, and healthcare and critical outsourced services sectors that they might not otherwise have access to outside the private equity industry.

7.     On September 7, 2021, Compass announced the acquisition of a majority interest in Lugano, a designer, manufacturer, and marketer of high-end jewelry, in a deal with an enterprise value of $256 million (excluding working capital and certain other adjustments upon closing). Based in Newport Beach, California, Lugano designs and manufactures unique jewelry for the luxury goods market. Lugano conducts sales via its own retail salons as well as pop-up

showrooms at Lugano-hosted or sponsored events in partnership with organizations in the equestrian, art, and philanthropic communities. The acquisition substantially increased the management fees paid by Compass to CGM (and thus the Individual Defendants). For example, the fees paid to CGM in 2022 (the first full year after the acquisition) equaled nearly $63 million, compared to approximately $35 million in 2020.

8.    Beginning in 2024, Lugano began purchasing inventory from a vendor who is a related party to Lugano through one of the executive officers of Lugano. That same year, Lugano sales growth accelerated. For the fiscal year ended December 31, 2024, net revenue attributable to Lugano grew by more than $162 million year-over-year, accounting for over 21% of the Company's total net sales – approximately double the proportion of Company sales attributable to Lugano just two years previously. For fiscal 2024, Lugano also accounted for over 57% of Compass' total operating income, making the business the most profitable among all Company businesses. The strong sales at Lugano contributed to nearly $75 million in 2024 management fees paid to defendant CGM (which flowed through to the Individual Defendants), a significant increase compared to prior years.

9.    On May 7, 2025, Compass announced that its 2024 financial statements should no longer be relied upon. The Company stated that an ongoing investigation into Lugano had identified "irregularities in Lugano's non-CODI financing, accounting, and inventory practices." Compass also stated that Moti Ferder ("Ferder"), founder and CEO of Lugano, had been terminated.

10.    As a result of these disclosures, Compass' stock price declined by $10.70 per share, or 62%, on May 8, 2025, on abnormally high trading volume, inflicting substantial financial losses and economic damages on Plaintiff.

11.    Through this action, Plaintiff seeks to hold the Board and executive officers accountable for making or causing the Company to make false and

PLAINTIFF'S DERIVATIVE COMPLAINT

misleading statements in breach of their fiduciary duties to the Company.

## PARTIES

### A. Plaintiff

12.    Plaintiff is a current shareholder of Compass and has continuously held Compass stock during all times relevant hereto and is committed to retaining Compass shares through the pendency of this action to preserve his standing. Plaintiff will adequately and fairly represent the interests of Compass and its shareholders in enforcing its rights.

### B. Nominal Defendant

13.    Nominal Defendant Compass Diversified Holdings is a publicly traded Delaware statutory trust, the purpose of which is to hold 100% of the limited liability interests of Nominal Defendant Compass Group Diversified Holdings LLC (the "Trust"). The common stock of the Trust is publicly traded on the New York Stock Exchange ("NYSE") under ticker symbol "CODI."

14.    Nominal Defendant Compass Group Diversified Holdings LLC is a holding company used to house the various operating companies that form the business of Compass.

15.    Nominal Defendant Compass Group Management LLC ("CGM") is the manager for Compass. Compass pays management fees to CGM, which includes the compensation paid to Compass' executive management, all of whom are employees of CGM. Pursuant to the Management Services Agreement applicable in 2024, Compass paid CGM a quarterly management fee equal to 0.5% (2% annually) of its consolidated adjusted net assets.

### C. Individual Defendants

16.    Defendant Elias J. Sabo has been the Company's Chief Executive Officer ("CEO") and a director of the Company since May 2018.  Sabo is also one of the founding partners of CGM.

17. Defendant Larry L. Enterline has been the Chair of the Company's Board since July 2022 and a director of the Company since July 2019.

18. Defendant Alexander S. Bhathal has been a director of the Company since January 2022.

19. Defendant James J. Bottiglieri has been a director of the Company since December 2005.

20. Defendant Gordon M. Burns has been a director of the Company since May 2008.

21. Defendant Harold S. Edwards has been a director of the Company since April 2006.

22. Defendant Heidi Locke Simon has been a director of the Company since July 2023.

23. Defendant Nancy B. Mahon has been a director of the Company since May 2023.

24. Defendant Teri R. Shaffer has been a director of the Company since July 2022.

25. Defendants Sabo, Enterline, Bhathal, Bottiglieri, Burns, Edwards, Simon, Mahon, and Shaffer are herein referred to as "Director Defendants."

26. Defendant Ryan J. Faulkingham was the Company's Chief Financial Officer ("CFO") during the Relevant Period until he stepped down, effective August 30, 2024.

27. Defendant Stephen Keller has been the Company's CFO since August 30, 2024.

28. Defendants Sabo, Faulkingham, and Keller are herein referred to as "Officer Defendants."

## FURTHER SUBSTANTIVE ALLEGATIONS

### A. Company Background

29.    Compass is a holding company and trust created for the purpose of acquiring and managing a group of small and middle-market businesses headquartered in North America. The Company takes controlling interests in and actively manages businesses that defendants claim: (i) operate in industries with long-term macroeconomic growth opportunities; (ii) have positive and stable cash flows; (iii) face minimal threats of technological or competitive obsolescence; and (iv) have strong management teams largely in place. Defendants represent that Compass offers investors a unique opportunity to own a diverse group of leading middle-market businesses in the branded-consumer, industrial, and healthcare and critical outsourced services sectors that they might not otherwise have access to outside the private equity industry.

30.    On September 7, 2021, Compass announced the acquisition of a majority interest in Lugano, a designer, manufacturer, and marketer of high-end jewelry, in a deal with an enterprise value of $256 million (excluding working capital and certain other adjustments upon closing). Based in Newport Beach, California, Lugano designs and manufactures unique jewelry for the luxury goods market. Lugano conducts sales via its own retail salons as well as pop-up showrooms at Lugano-hosted or sponsored events in partnership with organizations in the equestrian, art, and philanthropic communities. The acquisition substantially increased the management fees paid by Compass to CGM (and thus the Individual Defendants). For example, the fees paid to CGM in 2022 (the first full year after the acquisition) equaled nearly $63 million, compared to approximately $35 million in 2020.

31.    Beginning in 2024, Lugano began purchasing inventory from a vendor who is a related party to Lugano through one of the executive officers of Lugano. That same year, Lugano sales growth accelerated. For the fiscal year ended December 31, 2024, net revenue attributable to Lugano grew by more than $162

million year-over-year, accounting for over 21% of the Company's total net sales – approximately double the proportion of Company sales attributable to Lugano just two years previously. For fiscal 2024, Lugano also accounted for over 57% of Compass' total operating income, making the business the most profitable among all Company businesses. The strong sales at Lugano contributed to nearly $75 million in 2024 management fees paid to defendant CGM (which flowed through to the Individual Defendants), a significant increase compared to prior years.

**B.    Compass' False and Misleading Statements**

32.    On May 1, 2024, Compass issued a press release reporting its financial results for its first fiscal quarter ended March 31, 2024. According to the release, during the quarter Compass' net sales increased 8% year-over-year to over $524 million and its adjusted earnings increased 73% year-over-year to more than $34 million. The release stated that these favorable results were "driven by a 61% increase in Lugano net sales" to over $103 million during the quarter and adjusted quarterly EBITDA at Lugano of approximately $42 million. The release also quoted defendant Sabo as stating that Lugano had a "'great first quarter[],'" which allowed the Company to raise its outlook.

33.    Also on May 1, 2024, Compass filed with the SEC a quarterly report on Form 10-Q for its first fiscal quarter of 2024. The report contained the same financial information regarding Compass and Lugano's first quarter as provided in the Company-issued press release. The report stated that there had "been no material changes in [Compass'] internal control over financial reporting" during the quarter. The report was signed by defendant Faulkingham, and both he and defendant Sabo filed certifications attesting to the report's accuracy and completeness and that the report was free from fraud and the product of effective internal controls over financial reporting.

34.    On July 31, 2024, Compass issued a press release reporting its

financial results for its second fiscal quarter ended June 30, 2024. According to the release, during the quarter Compass' net sales increased 11% year-over-year to approximately $543 million and its adjusted earnings increased 36% year-over-year to nearly $40 million. The release stated that these favorable results were due to "continued strong sales growth at Lugano," which had grown to over $99 million during the quarter, and adjusted quarterly EBITDA at Lugano of approximately $36 million.

35.   Also on July 31, 2024, Compass filed with the SEC a quarterly report on Form 10-Q for its second fiscal quarter of 2024. The report contained the same financial information regarding Compass and Lugano's second quarter as provided in the Company-issued press release. The report stated that there had "been no material changes in [Compass'] internal control over financial reporting" during the quarter. The report was signed by defendant Faulkingham, and both he and defendant Sabo filed certifications attesting to the report's accuracy and completeness and that the report was free from fraud and the product of effective internal controls over financial reporting.

36.   On October 30, 2024, Compass issued a press release reporting its financial results for its third fiscal quarter ended September 30, 2024. According to the release, during the quarter Compass' net sales increased 12% year-over-year to approximately $583 million and its adjusted earnings increased 65% year-over-year to nearly $49 million. The release stated that these favorable results were due to "continued strong sales growth at Lugano," which had grown to approximately $119 million during the quarter, and adjusted quarterly EBITDA at Lugano of approximately $51 million.

37.   Also on October 30, 2024, Compass filed with the SEC a quarterly report on Form 10-Q for its third fiscal quarter of 2024. The report contained the same financial information regarding Compass and Lugano's third quarter as

provided in the Company-issued press release. The report stated that there had "been no material changes in [Compass'] internal control over financial reporting" during the quarter. The report was signed by defendant Keller, and both he and defendant Sabo filed certifications attesting to the report's accuracy and completeness and that the report was free from fraud and the product of effective internal controls over financial reporting.

38.    On February 27, 2025, Compass issued a press release reporting its financial results for its fourth fiscal quarter and year ended December 31, 2024. According to the release, during the fourth quarter Compass' net sales increased 14% year-over-year to more than $620 million and its adjusted earnings increased 29% year-over-year to over $118 million. The release stated that these favorable results were due to "continued strong sales growth at Lugano," which had grown to nearly $150 million during the quarter, and adjusted quarterly EBITDA at Lugano of approximately $66 million.

39.    Also on February 27, 2025, Compass filed with the SEC an annual report on Form 10-K for its fiscal year 2024. The report contained the same financial information regarding Compass and Lugano's fourth quarter and full year 2024 as provided in the Company-issued press release. The report stated that there had "not been any changes in the Company's internal control over financial reporting" during the fourth quarter. The report was signed by defendants Keller and Sabo, and both defendants filed certifications attesting to the report's accuracy and completeness and that the report was free from fraud and the product of effective internal controls over financial reporting.

40.    The foregoing statements were materially false and misleading, and failed to disclose materially adverse facts about the Company's business and operations. Specifically, the statements failed to disclose that: (a) Lugano had violated applicable accounting rules and acceptable industry practices with respect

to its financing, accounting, and inventory practices during the Company's fiscal 2024; (b) Lugano's 2024 financial results had been artificially distorted by these irregularities; (c) Compass had failed to implement effective internal controls over the Company's financial reporting; and (d) as a result of (a)-(c) above, Compass' reported 2024 financial results did not reflect the actual financial results of the Company and such reported results were materially misstated.

**C.    The Truth is Revealed**

41.    On May 7, 2025, Compass announced that its 2024 financial statements should no longer be relied upon. The Company stated that an ongoing investigation into Lugano had identified "irregularities in Lugano's non-CODI financing, accounting, and inventory practices." Compass also stated that Ferder, founder and CEO of Lugano, had been terminated. The release stated in pertinent part as follows:

> Compass Diversified (NYSE: CODI) ("CODI") today disclosed nonreliance on its financial statements for fiscal 2024 amid an ongoing internal investigation into its subsidiary, Lugano Holding, Inc. It also announced that it intends to delay the filing of its first quarter 2025 Form 10-Q.

> The Audit Committee of CODI's Board of Directors promptly launched an investigation after CODI's senior leadership was made aware of concerns about how Lugano was potentially financing inventory. The investigation, led by outside counsel and a forensic accounting firm, is ongoing but has preliminarily identified irregularities in Lugano's non-CODI financing, accounting, and inventory practices. After discussing with senior leadership and investigators, the Audit Committee of CODI's Board has concluded that the previously issued financial statements for 2024 require restatement and should no longer be relied upon.

> Effective May 7, 2025, Lugano's founder and CEO, Moti Ferder, resigned from all of his positions at Lugano and will not receive any severance compensation.

42.    As a result of these disclosures, Compass' stock price declined by $10.70 per share, or 62%, on May 8, 2025, on abnormally high trading volume of over 14 million shares traded. Compass preferred shares also suffered significant

price declines, inflicting substantial financial losses and economic damages on Plaintiff and other Company stockholders. For example, Compass Preferred C shares declined by $6.91 per share, or 30%, on May 8, 2025, on abnormally high trading volume of over 600,000 shares traded.

**D.    Defendants' Misconduct Has and Continues to Harm the Company**

43.    As a direct and proximate result of the Defendants' conduct, the Company has been harmed and will continue to be. The harm includes, but is not limited to, the costs already incurred and to be incurred defending the Company in the Securities Action, as well as costs to be incurred in remediating deficiencies in the Company's internal controls.

44.    Compass' reputation and goodwill have also been damaged by the Defendants' misconduct.

**E.    Compass Issues False and Misleading Proxy Statements**

45.    In addition to the false and misleading statements discussed above, the Director Defendants also caused the Company to issue false and misleading proxy statements during the Relevant Period, including the Schedule 14A Proxy Statements issued on April 12, 2023 (the "2023 Proxy"), April 10, 2024 (the "2024 Proxy"), and May 8, 2025 (the "2025 Proxy") (collectively, the "False Proxies"), that sought stockholder votes to, among other things, re-elect the Director Defendants to serve on the Board.

46.    The Director Defendants drafted, approved, reviewed, and/or signed the False Proxies before they were filed with the SEC and disseminated to Compass' stockholders. The Director Defendants negligently issued materially misleading statements in the False Proxies. These allegations are based solely on negligence, they are not based on any allegations of recklessness or knowing conduct by or on behalf of the Director Defendants and they do not allege or do not sound in fraud. Plaintiff specifically disclaims any allegations of, reliance upon any

allegation of, or reference or any allegation of fraud, scienter, or recklessness with regard to the False Proxies allegations and related claims.

47.     In support of re-electing themselves, the Director Defendants highlighted their supposed oversight of the Company in the False Proxies.

48.     The 2023 Proxy stated:

The Company's Board has overall responsibility for risk oversight. In furtherance of this responsibility, during 2022, the Board added a director with risk oversight, and specifically, cybersecurity experience. The Company's general counsel presents, and the Board assesses, at least annually, the critical legal and regulatory risks associated with the businesses of the Company and each of its subsidiaries, the overall risk environment for the Company's business, as well as the steps taken by the appropriate management team, if any, to mitigate any such risks.

49.     The 2024 Proxy and the 2025 Proxy similarly stated:

Our Board recognizes the importance of effective risk oversight to the organization's continued success and in fulfilling its fiduciary responsibilities to the Company and its shareholders. The members of the Company's senior leadership team, including our Chief Executive Officer, Co-Chief Compliance Officers, General Counsel, Chief Financial Officer, Senior Vice President of Internal Audit, and the Chief Operating Officer and Vice President and Director of ESG of our Manager, are responsible for the day-to-day management of risk, and the regular reporting to the Board or the appropriate committee, regarding the Company's major risk exposures (such as strategic and competitive risks, financial risks, brand and reputation risks, cybersecurity and technology risks, legal and compliance risks, regulatory risks, ESG risks, and operational risks) and the steps management has taken to monitor and control such exposures. Our Board is responsible for promoting an appropriate culture of risk management throughout the organization, overseeing our aggregate risk profile and monitoring how the Company addresses specific risks. In furtherance of this responsibility, the Board has continually added directors with general risk oversight experience, and specific expertise in areas such as cybersecurity, sustainability and global corporate citizenship.

Our General Counsel updates the Board regularly on material legal and regulatory matters and presents, and the Board assesses, at least annually, the critical legal and regulatory risks associated with the business of the Company and each of its subsidiaries, the overall risk environment for the Company's business, as well as the steps taken by the appropriate management team, if any, to mitigate such risks.

50.     The False Proxies thus assured stockholders that the Director

Defendants understood Company-wide risks, actively oversaw the Company's risks and exposures, as well as steps taken to monitor and mitigate risk exposures. In reality, the Director Defendants were utterly failing in their oversight duties by allowing the Company to operate with inadequate internal controls which resulted in the failure to disclose or prevent the Defendants from causing the Company to make materially false and misleading statements concerning "irregularities in Lugano's non-CODI financing, accounting, and inventory practices," specifically, that (a) Lugano had violated applicable accounting rules and acceptable industry practices with respect to its financing, accounting, and inventory practices during the Company's fiscal 2024; (b) Lugano's 2024 financial results had been artificially distorted by these irregularities; (c) Compass had failed to implement effective internal controls over the Company's financial reporting; and (d) as a result of (a)-(c) above, Compass's reported 2024 financial results did not reflect the actual financial results of the Company and such reported results were materially misstated.

51.    As a result of these misleading statements, the Company's stockholders voted via an uninformed stockholder vote to re-elect the Director Defendants to the Board.

**F.    The Board Breached its Fiduciary Duties**

52.    As officers and/or directors of Compass, the Defendants owed Compass fiduciary duties of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Compass in a fair, just, honest and equitable manner. The conduct of the Director Defendants involves a knowing or reckless violation of their obligations as directors and officers of Compass, the absence of good faith on their part, and a reckless disregard for their duties to the Company that Director Defendants were aware or should have been aware posed a risk of serious injury to the Company.

PLAINTIFF'S DERIVATIVE COMPLAINT

53.    Defendants, because of their positions of control and authority as directors and/or officers of Compass, were able to and did exercise control over the wrongful acts complained of herein. As officers and/or directors of a publicly-traded company, the Defendants had a duty to prevent the dissemination of inaccurate and untruthful information regarding Compass' financial condition, performance, growth, operations, financial statements, business, management, earnings, internal controls, and business prospects, so as to ensure that the market price of the Company's common stock would be based upon truthful and accurate information.

54.    To discharge their duties, the officers and directors of Compass were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors and Compass were required to, among other things:

(a)    Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the Company's stockholders;

(b)    Conduct the affairs of the Company in a lawful, efficient, business-like manner to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)    Refrain from unduly benefiting themselves and other Company insiders at the expense of the Company;

(d)    Oversee public statements made by the Company's officers and employees as to the financial condition of the Company at any given time, including ensuring that any statements about the Company's financial results and prospects are accurate, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be

-15-

true and accurate at all times;

     (e)    Remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws;

     (f)    Maintain and implement an adequate and functioning system of internal controls to ensure that the Company complied with all applicable laws, rules, and regulations; and

     (g)    Ensure that the Company is operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules and regulations.

55.    The conduct of the Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of the Company, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its stockholders, which the Defendants were aware, or should have been aware, posed a risk of serious injury to the Company.

56.    The Board's Audit Committee is tasked with overseeing Compass' financial reporting system and assisting the Board with its oversight of the adequacy and effectiveness of Compass' internal controls over financial reporting and its disclosure controls and procedures. Specifically, according to the Audit Committee's charter, the Audit Committee's responsibilities include:

- assisting the Board in fulfilling its oversight responsibility relating to the integrity of the Company's and its subsidiaries' financial statements, the accounting and financial reporting processes and the financial statement audits;

- overseeing the Company's financial reporting and disclosure process, including oversight of management1 and independent auditors in the

production of the Company's financial statements, as well as all
controls and procedures relating thereto;

- reviewing with the Company's Chief Executive Officer, Chief
  Financial Officer, management, the internal auditors or other
  personnel responsible for the internal audit function, and the
  independent auditors, the adequacy and effectiveness of the
  Company's and its subsidiaries' financial reporting processes, internal
  controls over financial reporting and disclosure controls and
  procedures, including any significant deficiencies and material
  weaknesses in the design or operation of, and any material changes in,
  the Company's processes, controls, procedures, or service providers
  (such as the Manager or accountants) and any special audit steps
  adopted in light of any material control deficiencies, and any fraud
  involving management or other employees with a significant role in
  such processes, controls or procedures;

- discuss with management and the Company's independent auditors
  changes in internal control over financial reporting that have
  materially affected or are reasonably likely to materially affect the
  Company's control over financial reporting; and

- reviewing and discussing with management and the Company's
  independent auditors disclosures relating to the Company's financial
  reporting processes, internal control over financial reporting and
  disclosure controls and procedures, the independent auditors' report
  on the effectiveness of the Company's internal control over financial
  reporting and the required management certifications made by the
  Company's Chief Executive Officer and Chief Financial Officer, or
  persons performing similar roles, to be included in or attached as
  exhibits to the Company's Annual Report on Form 10-K or Quarterly
  Report(s) on Form 10-Q, as applicable.

57.    In violation of the Audit Committee Charter, and their general duties
as members of the Audit Committee, Defendants James J. Bottiglieri, Harold S.
Edwards, Teri R. Shaffer, and Heidi Locke Simon (the "Audit Committee
Defendants") conducted little, if any, oversight of the Company's internal controls
over financial reporting, resulting in materially false and misleading statements

regarding the Company's business and consciously disregarded their duties to monitor such controls. The Audit Committee's complete failure to perform their duties in good faith resulted in misrepresentations to the public and the Company's stockholders.

58.     In addition, as officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act, the Defendants had a duty not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, so that the market price of the Company's common stock would be based upon truthful and accurate information. Accordingly, the Defendants breached their fiduciary duties by knowingly or recklessly causing the Company to make false and misleading statements of material fact about the Company's maintaining adequate internal controls and compliance with applicable rules and regulations.

59.     The Defendants' flagrant violations of their fiduciary duties and unwillingness to heed the requirements of their Audit Committee Charter have inflicted, and will continue to inflict, significant harm on Compass.

## **DERIVATIVE ALLEGATIONS**

60.     Plaintiff brings this action derivatively in the right and for the benefit of Compass to redress injuries suffered by Compass as a direct result of the Director Defendants' breaches of fiduciary duty. Compass is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

61.     Plaintiff will adequately and fairly represent the interests of Compass in enforcing and prosecuting the Company's rights.

62.     Plaintiff was a stockholder of Compass at the time of the wrongdoing

PLAINTIFF'S DERIVATIVE COMPLAINT

complained of, has continuously been a stockholder since that time, and is currently a Compass stockholder.

## DEMAND FUTILITY ALLEGATIONS

63.    Plaintiff repeats, re-alleges, and incorporates by reference each and every allegations set forth as though fully set forth herein.

64.    The Compass Board currently has nine (9) members.

65.    Plaintiff has not made any demand on Compass' current Board to institute this action against the Director Defendants, as any pre-suit demand would be excused. The Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

### A.    The Director Defendants Lack Independence Because They Face a Substantial Likelihood of Liability

66.    As alleged above, the Director Defendants breached their fiduciary duties by negligently issuing the materially false and misleading False Proxies soliciting the reelection of themselves to the Board. Accordingly, the Director Defendants face a substantial likelihood of negligence liability for issuing the False Proxies and any demand upon these defendants is therefore futile.

67.    The Director Defendants face a substantial likelihood of liability for their individual misconduct. As alleged above, the Director Defendants breached their fiduciary duties by allowing the Company to issue the materially false and misleading statements described above. The Director Defendants had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate.

68.    In addition, the Director Defendants owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective

(and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care. Instead, the Director Defendants knowingly and/or with reckless disregard reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices and misrepresented the financial health of Compass.

69.     The Director Defendants' making or authorization of these false and misleading statements, failure to timely correct such statements, failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required due diligence constitute breaches of fiduciary duties that have resulted in the Director Defendants facing a substantial likelihood of liability. If the Director Defendants were to bring a suit on behalf of Compass to recover damages sustained as a result of this misconduct, they would expose themselves and their colleagues to significant liability. For this reason, demand is futile as to the Director Defendants.

**B.     The Officer Defendants are not Independent**

70.     Defendant Sabo is the Company's CEO and is employed by one of the founding partners of CGM.    Sabo receives compensation from CGM.    CGM receives a quarterly management fee from Compass and Mr. Sabo, as an equity member of CGM, receives periodic cash distributions from CGM.    Defendant Sabo therefore depends on Compass for his income.

71.     Defendant Keller is the Company's current CFO and is employed by CGM.    Keller received compensation of $490,866 in 2024. Defendant Keller depends on Compass for his income.

72.     Defendant Faulkingham is the Company's former CFO.    Faulkingham

received compensation of $1,822,049 in 2024.

73.    In addition, Compass stated in the Schedule 14A Proxy Statement filed with the SEC that the Officer Defendants are not independent pursuant to SEC and NYSE rules.

**C.    The Audit Committee Defendants are not Disinterested Because They Were Members of the Committee Responsible for Overseeing Financial Reporting**

74.    One of the Audit Committee's responsibilities is risk oversight. The Audit Committee was thus responsible for reviewing and approving Compass' Forms 10-Q and 10-K filed between 2024 and 2025. The Auditor Committee Defendants were members of the Audit Committee during the relevant time period and were thus responsible for knowingly or recklessly allowing the improper statements related to the Company's earnings guidance and financial and disclosure controls. Through their knowledge or reckless disregard, Auditor Committee Defendants caused improper statements by the Company. Accordingly, the Auditor Committee Defendants breached their fiduciary duty of loyalty and good faith because they participated in the misconduct described above. They face a substantial likelihood of liability for these breaches, making any demand on them futile.

75.    Based on the facts alleged herein, there is a substantial likelihood that Plaintiff will be able to prove that these individuals breached their fiduciary duties by condoning the misconduct and failing to take meaningful action to remedy the resultant harm.

<u>**CLAIMS FOR RELIEF**</u>
<u>**COUNT I**</u>
<u>**Breach of Fiduciary Duty**</u>
<u>**(Derivatively Against The Director Defendants)**</u>

76.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

77.     Each of the Defendants owed and owes Compass the highest obligations of loyalty, good faith, due care, and oversight.

78.     Each of the Defendants violated and breached their fiduciary duties of loyalty, good faith, candor and oversight to the Company.

79.     The Director Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. In breach of their fiduciary duties, the Director Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

80.     In addition, the Director Defendants further breached their fiduciary duties owed to Compass by willfully or recklessly making and/or causing the Company to make false and misleading statements and omissions of material fact and allowing the Company to operate with inadequate internal controls which resulted in the misrepresentations and failure to disclose "irregularities in Lugano's non-CODI financing, accounting, and inventory practices," specifically, that (a) Lugano had violated applicable accounting rules and acceptable industry practices with respect to its financing, accounting, and inventory practices during the Company's fiscal 2024; (b) Lugano's 2024 financial results had been artificially distorted by these irregularities; (c) Compass had failed to implement effective internal controls over the Company's financial reporting; and (d) as a result of (a)-(c) above, Compass's reported 2024 financial results did not reflect the actual financial results of the Company and such reported results were materially misstated.

81.     The Director Defendants failed to correct and cause the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact, exposing them to personal liability to the Company for breaching their fiduciary duties.

82.  The Director Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the wrongdoing set forth herein and to fail to maintain adequate internal controls. The Director Defendants had actual knowledge that the Company was engaging in the wrongdoing set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the wrongdoing and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities. The Director Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

83.  As a direct and proximate result of the breaches of duty alleged herein, Compass has sustained and will sustain significant damages.

84.  As a result of the misconduct alleged herein, these Defendants are liable to the Company.

85.  Plaintiff, on behalf of Compass, has no adequate remedy at law.

## COUNT II
## Breach of Fiduciary Duty
## (Derivatively Against the Officer Defendants)

86.  Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

87.  The Officer Defendants are executive officers of the Company. As executive officers, The Officer Defendants owed and owe Compass the highest obligations of loyalty, good faith, due care, oversight, and candor.

88.  The Officer Defendants breached their fiduciary duties owed to Compass by willfully or recklessly making and/or causing the Company to make

false and misleading statements and omissions of material fact, failing to disclose
"irregularities in Lugano's non-CODI financing, accounting, and inventory
practices," specifically, that (a) Lugano had violated applicable accounting rules
and acceptable industry practices with respect to its financing, accounting, and
inventory practices during the Company's fiscal 2024; (b) Lugano's 2024 financial
results had been artificially distorted by these irregularities; (c) Compass had failed
to implement effective internal controls over the Company's financial reporting;
and (d) as a result of (a)-(c) above, Compass's reported 2024 financial results did
not reflect the actual financial results of the Company and such reported results
were materially misstated.

89.    The Officer Defendants failed to correct and cause the Company to fail
to rectify any of the wrongs described herein or correct the false and misleading
statements and omissions of material fact.

90.    As a direct and proximate result of the breaches of duty alleged herein,
Compass has sustained and will sustain significant damages.

91.    As a result of the misconduct alleged herein, the Officer Defendants
are liable to the Company.

92.    Plaintiff, on behalf of Compass, has no adequate remedy at law.

**COUNT III**
**Violation of Section 14(a) of the Exchange Act**
**(Against The Director Defendants)**

93.    Plaintiff incorporates each and every allegation set forth above as if
fully set forth herein.

94.    The section 14(a) Exchange Act claims alleged herein are based solely
on negligence. They are not based on any allegation of reckless or knowing conduct
by or on behalf of the Director Defendants. The section 14(a) Exchange Act claims
detailed herein do not allege and do not sound in fraud. Plaintiff specifically

disclaims any allegation of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to the nonfraud claims.

95.    The Director Defendants negligently issued, caused to be issued, and participated in the issuance of materially misleading written statements to stockholders which were contained in the False Proxies. In the False Proxies, the Board solicited stockholder votes to reelect the Director Defendants to the Board.

96.    The False Proxies, however, misrepresented and failed to disclose the Board's risk oversight and the Company's inadequate internal controls, which facilitated the illegal behavior described herein. By reasons of the conduct alleged herein, the Director Defendants violated section 14(a) of the Exchange Act. As a direct and proximate result of these defendants' wrongful conduct, Compass misled and deceived its stockholders by making materially misleading statements that were essential links in stockholders following the Company's recommendation and voting to reelect the Director Defendants.

97.    Plaintiff, on behalf of Compass, thereby seeks relief for damages inflicted upon the Company based upon the misleading False Proxies in connection with the improper reelection of the Director Defendants to the Board.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands judgment as follows:

A.    Declaring that Plaintiff may maintain this derivative action on behalf of Compass and that Plaintiff is a proper and adequate representative of the Company;

B.    Against all of the Defendants and in favor of Compass for the amount of damages sustained by the Company as a result of the acts and transactions complained of herein;

C.    Granting appropriate equitable relief to remedy the Defendants' breaches of fiduciary duties, including, but not limited to the institution of

appropriate corporate governance measures;

        D.        Awarding Compass restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by Defendants;

        E.        Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

        F.        Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: <u>June 5, 2025</u>      By:  <u>/s/ Francis J. "Casey" Flynn, Jr.</u>

                                 Francis J. "Casey" Flynn, Jr., #304712
                                 **LAW OFFICE OF FRANCIS J. FLYNN, JR.**
                                 5067 Metropolitan Plz
                                 Los Angeles, CA 90036
                                 Tele: 314-662-2836
                                 Email: casey@lawofficeflynn.com

                                 **ROWLEY LAW PLLC**
                                 Shane T. Rowley (to seek admission pro hac vice)
                                 Danielle Rowland Lindahl (to seek admission pro hac vice)
                                 50 Main Street, Suite 1000
                                 White Plains, New York 10606
                                 Phone: (914) 400-1920
                                 Email: srowley@rowleylawpllc.com
                                        drl@rowleylawpllc.com

                                 **ATTORNEYS FOR PLAINTIFFS**

PLAINTIFF'S DERIVATIVE COMPLAINT